**[J-41D-2017] [OAJC: Saylor, C.J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 86 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court at No. 2125 MDA 2014 dated July |
| | : | 14, 2015, vacating and remanding the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Schuylkill County, |
| | : | Criminal Division, at No. CP-54-CR- |
| ANGEL ANTHONY RESTO, | : | 0001840-2013 dated November 24, |
| | : | 2014 |
| Appellee | : | |
| | : | ARGUED: May 9, 2017 |
| | : | |

## CONCURRING OPINION

**JUSTICE TODD**                                **DECIDED: February 21, 2018**

This is the third in a series of recent decisions by our Court interpreting the contours of a defendant's Sixth Amendment right, pursuant to *Alleyne*,[1] to have a jury find beyond a reasonable doubt any fact that increases his or her mandatory minimum sentence. Here, the fact of a conviction, which triggered the mandatory minimum sentence under 42 Pa.C.S. § 9718(a)(3), was found by a jury beyond a reasonable doubt. That being the case, Appellee's Sixth Amendment rights were not violated. Therefore, I join the ultimate conclusion of the Opinion Announcing the Judgment of the Court ("OAJC") that Appellee is not entitled to relief. However, like Justice Dougherty, whose concurrence I join in full, I cannot accept the OAJC's attempt to distinguish our

---

[1] *Alleyne v. United States*, 133 U.S. 2151 (2013).

Court's prior decision in *Wolfe*.[2] Indeed, in my view, the OAJC's flawed premise, that there is no "aggravating fact" in this case, OAJC at 4, creates a false distinction with *Wolfe*. The "fact" of the underlying conviction is the trigger for the mandatory minimum sentence, no different than the "fact" of the element of the underlying conviction in *Wolfe* was the trigger for the mandatory minimum sentence in that case. In essence, to reach its result, the OAJC advances my dissenting approach in *Wolfe*, which was joined by Justice Dougherty, an analysis a majority of this Court therein rejected. As a result, in my view, like that of Justice Dougherty, the OAJC should not give continued life to our erroneous decision in *Wolfe*, but should overrule it. Thus, for the reasons set forth below, I respectfully concur only in the result.

By way of background, in its 2013 decision in *Alleyne*, the United States Supreme Court addressed the question of whether, under the Sixth Amendment, a conviction for using or carrying a firearm in relation to a crime of violence, which carried a mandatory minimum five-year sentence, and which was increased to a seven-year mandatory minimum sentence if a firearm was "brandished" when committing the crime, required a jury, rather than a judge, to find the fact of brandishing. Building upon its prior decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000),[3] the high Court determined that a mandatory minimum sentence, like a mandatory maximum sentence, increases the penalty for a crime, and any fact that increases the penalty for a crime is an element that must be found by the jury; therefore, any fact that increases such a sentence is an element of a new aggravated offense, that must be submitted to the jury.

---

[2] *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016).

[3] In *Apprendi,* the high Court determined that any fact that increases a defendant's sentence "beyond the prescribed statutory maximum" is an element to be found by the jury, regardless of the legislature's designation. 530 U.S. at 490.

Moreover, as an element of the offense, the factual predicate must be specifically alleged in the charging document, and the defendant has the right to have that fact determined by a jury beyond a reasonable doubt. *Alleyne,* 133 S.Ct. at 2160-61.

Our Court first grappled with the Sixth Amendment as interpreted by *Alleyne* two years ago in *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015). In *Hopkins*, we considered the constitutionality of a sentence imposed upon a defendant for a conviction of delivery or possession with intent to deliver a controlled substance, with a mandatory minimum to be applied when that offense was committed by a defendant who was over 18 years of age, and within 1,000 feet of, *inter alia*, a school. 18 Pa.C.S. § 6317(a).[4] Defendant Kyle Hopkins urged that his mandatory minimum sentence

---

[4] Section 6317 provides:

**(a) General rule.--**A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

(continued…)

under Section 6317 violated *Alleyne* as it was based upon facts — that the offender was over 18 years of age, and the proximity of the drug transaction to a school — that were not found by a jury, but rather by a judge pursuant to the "proof-at-sentencing" provisions in Section 6317(b). The Commonwealth, for its part, while conceding some sections of the sentencing statute were unconstitutional in light of *Alleyne*, nevertheless

---

(…continued)

**(b) Proof at sentencing.--**The provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

**(c) Authority of court in sentencing.--**There shall be no authority for a court to impose on a defendant to which this section is applicable a lesser sentence than provided for in subsection (a), to place the defendant on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section. Disposition under section 17 or 18 of The Controlled Substance, Drug, Device and Cosmetic Act shall not be available to a defendant to which this section applies.

**(d) Appeal by Commonwealth.--**If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

18 Pa.C.S. § 6317.

argued that those provisions were severable, and, thus, that the sentencing statute could still be enforced without them.

Our Court reviewed Section 6317 and considered various provisions which, we found, were indeed unconstitutional after *Alleyne*. We detailed that, in particular, the proof-at-sentencing provisions in Section 6317(b) were in conflict with *Alleyne*, highlighting (1) that it was the sentencing court, rather than a jury, that rendered a factual determination regarding the age of the offender and the proximity of the drug transaction to the school; (2) that the legislature intended that mandatory minimum provisions were not to constitute an element of the crime; (3) that notice of the application of the mandatory minimum sentence was not required prior to conviction; (4) that the relevant fact finding required only a preponderance of the evidence; and (5) that the Commonwealth's right to appeal the fact finding determination raised double jeopardy concerns. Thus, we concluded that the sentencing provisions were unconstitutional under *Alleyne*.

We then continued to the more difficult question of whether the statute could survive without these offensive provisions. We explained that, in determining the severability of a statute, the primary focus was on the legislative intent, and whether the statute, without the infirm provisions, could still function consistent with that intent. Further, we determined that the non-infirm provisions, standing alone, were incomplete and incapable of being carried out consistent with the intent of the General Assembly, especially the legislature's expression that the mandatory minimum sentencing triggers were not to be considered elements of a crime and that it did not intend Section 6317 to constitute a new aggravated offense. As our Court concluded that the statute could not survive without the invalid portions, we struck Section 6317 as violative of the Sixth Amendment and *Alleyne*.

One year after our decision in *Hopkins*, our Court again explored the contours of a defendant's Sixth Amendment rights in *Wolfe*. In *Wolfe*, the Court was faced with another mandatory minimum sentence, containing the same proof-at-sentencing provisions.[5] However, in *Wolfe*, the sentence was not based upon a fact divorced from the underlying conviction; instead, the triggering fact was an element of the underlying crime. Specifically, Matthew Wolfe was convicted of involuntary deviate sexual intercourse ("IDSI") where the victim was less than 16 years of age. 18 Pa.C.S. § 3123(a)(7). Section 9718(a)(1) of the Sentencing Code, similar to Section 6317(a) at issue in *Hopkins*, requires imposition of a mandatory minimum sentence for a variety of crimes where the victims are less than 16 years of age, including IDSI crimes. 42 Pa.C.S. § 9718(a)(1). Therefore, given this overlap in the age requirement in the offense as well as the mandatory sentencing trigger, the fact that triggered the mandatory minimum sentence was also the fact that served as the basis of the underlying conviction. Thus, this fact was (1) stated in the information; (2) an element of the offense; (3) found by a jury; and (4) found beyond a reasonable doubt. Accordingly, Wolfe enjoyed his Sixth Amendment right to a jury determination of this fact which served as the trigger for the mandatory minimum sentence, and all of the other requirements of *Alleyne* were satisfied. Nevertheless, in a 4-2 decision, the *Wolfe* majority found the entirety of Section 9718 to be unconstitutional.

Specifically, the *Wolfe* majority, instead of focusing on whether there was a constitutional violation, began with an examination of the sentencing statute and its similarities to the sentencing statute at issue in *Hopkins*. It initially set forth its premise that Section 9718 "plainly and explicitly require[s] judicial fact-finding in its subsection

---

[5] *Compare* 42 Pa.C.S. § 9718(c) *with* 18 Pa.C.S. § 6317(b).

(c)." *Wolfe*, 140 A.3d at 660-61 (citing 42 Pa.C.S. § 9718(c) ("The applicability of this section shall be determined at sentencing . . . by a preponderance of the evidence.")). The majority continued that "subsection (c) is integral to the statute," rejecting the Commonwealth's assertion that subsection 9718(c) can be deemed to be "moot, dormant, or irrelevant — or can be otherwise disregarded or overlooked." *Wolfe*, 140 A.3d at 661. As such, the majority explained that the remainder of the sentencing statute could not be severed from its infirm proof-at-sentencing provisions. Thus, the core of the majority's analysis was that a mandatory minimum sentence implemented by proof-at-sentencing provisions, such as those found in Section 9718(c), was unconstitutional in its entirety because it was incapable of severance. While acknowledging the anomaly that the age of the victim was, in fact, an element of the underlying crime, and thus found by the jury, the majority nevertheless offered that the mandatory minimum statute must be regarded as creating a "distinct and aggravated crime," *id.* (*quoting Alleyne*, 133 S.Ct. at 2163), such that judicial fact finding is nonetheless required: "although the jury at Appellee's trial plainly decided that the victim was under sixteen years of age, the sentencing court was bound to make its own determination at sentencing, *see* 42 Pa.C.S. § 9718(c), but it could not do so in a manner consistent with the Sixth Amendment to the United States Constitution, on account of *Alleyne*." *Wolfe*, 140 A.3d at 661.

Therefore, in *Wolfe*, although a jury determined beyond a reasonable doubt that the victim was under the age of 16, the majority explained that, because the sentencing court was also required to make that redundant determination at sentencing, imposition of the mandatory minimum sentence violated the Sixth Amendment. Indeed, the majority emphasized its broad holding stating that, "[b]ecause *Alleyne* invalidates material requirements of this statute, and because those provisions are non-severable

per *Hopkins*, *the statute simply cannot be enforced by the judiciary in any respect*," *id.* at 662 n.6 (emphasis added), and ultimately concluding that "Section 9718 is irremediably unconstitutional on its face, non-severable, and void," *id.* at 663.

In my dissent, joined by Justice Dougherty, I pursued a distinct analytical tack. *Wolfe*, 140 A.3d 664 (Todd, J., dissenting). Rather than starting with the sentencing statute, the dissenters first asked whether Wolfe's constitutional rights had been violated. In that regard, the dissenters observed that the fact which triggered the mandatory minimum sentence was not an extra or independent fact, as in *Hopkins*, but, rather, was already an element of the underlying criminal offense, listed in the information, and found by a jury. For this foundational reason, it was self-evident, in our view, that *Alleyne* was not implicated, and that Wolfe's constitutional rights were not violated. Furthermore, the dissenters disputed the *Wolfe* majority's assertion that, even though a jury found "in the abstract" the charged element beyond a reasonable doubt, *id.* at 662, nevertheless, a sentencing judge was also required to find the same fact by a lesser burden of proof, thus, violating Wolfe's Sixth Amendment rights. The dissenters observed that there was no support in *Alleyne* for the majority's ill-founded theory that the Sixth Amendment could be violated simply because a sentencing judge *redundantly* found a fact already found by the jury.

Finally, the dissenters offered that, even if Section 9718 were infirm, the harmless error doctrine should apply, as embraced by numerous state and federal courts. This, according to the dissenters, was especially appropriate, as the jury actually found beyond a reasonable doubt the fact triggering the mandatory minimum sentence. The majority, however, rejected the dissenters' proffer, admonishing that "a finding of harmless error would sanction a residual longevity in small segments of an unseverable statute requiring unconstitutional actions on the part of judicial officers." *Id.*

at 662 n.6. In short, in the view of the dissenters, the majority erred by finding the mandatory minimum statute to be infirm without first identifying the foundational constitutional violation to which Appellee was subjected.

In the case *sub judice*, the final installment of this trilogy, the mandatory minimum sentence at issue — imposed pursuant to the very same statute that was the focus in *Wolfe* — was triggered by a fact already found by the jury, the *underlying conviction itself*. *See* 42 Pa.C.S. § 9718(a)(3). Moreover, the same proof-at-sentencing provisions that served as the foundation for the majority's rejection of relief in *Wolfe*, Section 9718(c), are again at issue here. Yet, despite these seemingly dispositive similarities, the OAJC — rather than acting consistent with *Wolfe* and finding that, because the proof-at-sentencing provisions are void as found in *Wolfe*, and, thus, that Appellee is entitled to relief — curiously attempts to distinguish *Wolfe*. In doing so, the OAJC, *sub silento*, adopts the dissenters' approach in *Wolfe*.

First, it is noteworthy that the OAJC does not begin its analysis with an assessment of the viability of the proof-at-sentencing provisions, as the majority did in *Wolfe*. Rather, like the dissenters in *Wolfe*, the OAJC first, and appropriately, considers whether Appellee's Sixth Amendment rights were violated.

Next, the foundation to the OAJC's analysis is essentially that the underlying conviction that triggers the mandatory minimum is not an *Alleyne* "fact," whereas, by contrast, the age-of-victim element at issue in *Wolfe* was an *Alleyne* fact. *See* OAJC at 4 (finding "subsection (a)(3) requires no proof of any predicate or aggravating facts."). This foundation is faulty. There is no apparent difference between an underlying conviction serving as a trigger for a mandatory minimum sentence, and the subset thereof of an element of the underlying crime serving as a trigger. While the Supreme Court has not provided a definition of what constitutes an *Alleyne* fact, the clear import

of its decisions in this area is that any trigger for a mandatory minimum sentence must be found by a jury. Indisputably, both the underlying conviction here, and the underlying element in *Wolfe* (*i.e.*, the age of the victim), triggering Section 9718's mandatory minimum sentences, were found by a jury beyond a reasonable doubt, thereby satisfying *Alleyne*. Additionally, the OAJC's assertion that the underlying conviction at issue in this matter "is itself a contemporaneous jury determination, and the concern of *Alleyne* is with sentencing enhancements tied to facts to be determined by a judge at sentencing," OAJC at 4, is equally applicable to the age-of-victim element which the jury found in *Wolfe*. Yet, somehow, a constitutional violation was found in *Wolfe*, but, no violation is found in the OAJC. It is in my view, entirely illogical for the OAJC to come to the result it reaches today, but keep *Wolfe* intact.

Further, the OAJC jettisons the primary rationale used in *Wolfe* — that Section 9718(c) requires judicial fact finding in violation of *Alleyne* — by now asserting that Section 9718(c)'s proof-at-sentencing provisions are mere redundancies, again adopting the logic of the dissenters in *Wolfe*. Specifically, the *Wolfe* majority explicitly recognized the anomaly that the age-of-victim determination was an element of the underlying offense; yet, it found that that fact did not alter its "core assessment" that Section 9718 created a "distinct and aggravated crime" and that the "statute's directive for judicial fact-finding attaches to that aggravated crime notwithstanding a jury verdict; and that sentencing judges are not free to disregard such explicit legislative mandates by substituting their own procedures." *Wolfe*, 140 A.3d at 661.

The *Wolfe* dissenters explicitly challenged this concern regarding redundant fact finding, noting that "the [*Wolfe*] majority cites nothing to suggest the *Alleyne* Court was concerned about a judge making factual findings redundant to those of the jury." *Wolfe*, 140 A.3d at 669 (Todd, J., dissenting); *id.* at 670 (rejecting the majority's conclusion that

Wolfe's "Sixth Amendment jury trial rights were nonetheless impaired because a sentencing judge redundantly found this same fact by a lesser burden of proof"). Nonetheless, the *Wolfe* majority found the statutory framework unenforceable "in any respect". *Wolfe*, 140 A.3d at 662 n.6. Yet, herein, the OAJC dismisses the same proof-at-sentencing provisions as merely "awkward" or "superfluous," and contends that "no proof of any facts is required at sentencing." OAJC at 4. The OAJC thus transforms the "core" defects in *Wolfe* into mere gratuities today.

Finally, the OAJC's severance analysis is irreconcilable with that employed in *Wolfe*. The OAJC individually dissects the various subsections of Section 9718 — (a)(1), (a)(2), and (a)(3) — to see if they are inseparably connected, and ultimately able to survive constitutional infirmity. This approach, however, is in direct conflict with *Wolfe*, which, as noted above, looked at the entire statute and struck it in its entirety. *Wolfe*, 140 A.3d at 663 (finding "Section 9718 is irremediably unconstitutional on its face, non-severable, and void"). Indeed, the dissenters in *Wolfe* offered the very same individualized approach taken by the OAJC today, distinguishing the other criminal offenses referred to in Section 9718, and calling out the very subsection we address today:

> While the triggering fact for the mandatory minimum sentence under Section 9718 is, in this case, the same fact that is an element of the underlying criminal offense at Section 3123(a)(7), the vast majority of other criminal offenses referred to in Section 9718 follow the factual situation which gave rise to *Alleyne,* in that the fact that triggers the mandatory minimum sentence is independent of the facts constituting the elements of the underlying criminal offense. Indeed, of the 21 criminal offenses referenced in Section 9718(a)(1) and (2), only three, 18 Pa.C.S. § 3123(a)(7), (b) and (c), subsume the same factual predicate as that required for imposition of the mandatory minimum sentence. Additionally, I note that the convictions themselves of four offenses, 18 Pa.C.S. § 121(c) and (d), 18 Pa.C.S. § 3125(a)(7), and 18 Pa.C.S. § 3125(b), serve as the

> necessary trigger for the mandatory minimum sentences provided in Section 9718(a)(3). Respecting this last situation, the issue of the validity under *Alleyne* of a mandatory minimum sentence imposed simply on the basis of the conviction of an underlying crime is raised in a petition for allowance of appeal that is currently before our Court in *Commonwealth v. Resto,* 774 MAL 2015.

*Wolfe*, 140 A.3d at 665 n.3 (Todd, J., dissenting).

Yet, the majority in *Wolfe* firmly rejected this approach on the basis of its conclusion that Section 9718(c)'s overarching requirement of judicial fact finding was unconstitutional:

> [W]e believe that our analysis is straightforward and rests on far firmer foundation than the dissent's position that *small segments* of a statute that is otherwise irreparably unconstitutional on its terms should be preserved on account of an anomaly, and despite suffering from the same, integral, explicit statutory directive for sentencing courts to perform what is now unconstitutional judicial fact finding.

*Wolfe*, 140 A.3d at 661 n.5 (emphasis added); *see also id.* at 662 n.6 (offering, in rejecting the dissenters' harmless error analysis, that "a finding of harmless error would sanction a residual longevity in *small segments* of an unseverable statute requiring unconstitutional actions on the part of judicial officers." (emphasis added)). The "small segments" the Court dismissed as an apparent irrelevancy in *Wolfe* are the sections the OAJC strives to preserve today.

Plainly, *Wolfe*'s rationale and the OAJC's approach *sub judice* cannot both stand. *Wolfe*'s emphatic unconditional language directly contradicts the OAJC's assertion that "some passages of *Wolfe* are written in overbroad terms to the degree that they disapprove Section 9718 as a whole," its claim that *Wolfe* used "loose language," and its urging that the decision "is to be read against its facts." OAJC at 6-7. On the contrary, *Wolfe*'s all-encompassing approach was unmistakable. Perhaps acknowledging the same, the OAJC continues that, "even if the relevant references to

Section 9718 as a whole were not *dictum*, the doctrine of *stare decisis* does not apply to pronouncements that are not adequately supported in reason." OAJC at 7. I wholeheartedly agree with this sentiment, but the OAJC's concession is too narrow. Its *post hoc* rewrite of *Wolfe* is unsupportable — we should either continue to follow *Wolfe*'s misguided construct and grant relief, or overrule that decision *in toto*. Given that there is no constitutional violation to correct here (nor was there in *Wolfe*), the law commands the latter. Indeed, it is seldom that we are so rapidly confronted with the error of a decision. But when we are, we should acknowledge it, and not work around it, thereby perpetuating our mistake.

For all of these reasons, I concur only in the result reached by the OAJC.

Justice Dougherty joins this concurring opinion.